**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GUSTAVO EDGARDO CASTRO RIVERA,

Petitioner,

v.

WARDEN FACILITY ADMINISTRATOR, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. ED CV 26-4922 FMO (AYP)

**ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS**

On August 25, 2026, Gustavo Edgardo Castro Rivera ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against the Warden Facility Administrator of the Adelanto ICE Processing Center; Thomas P. Giles, Field Office Director of the Los Angeles ICE Field Office; Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States (collectively, "respondents"). (See Dkt. 1, Petition at ECF 1).

Petitioner filed the instant Petition pro se. (See Dkt. 1, Petition at ECF 2). On August 31, the court referred the matter to the Federal Public Defender for the Central District of California ("FPD"). (Dkt. 7, Court's Order of August 31, 2026). On September 1, 2026, counsel from the FPD entered an appearance on petitioner's behalf. (Dkt. 11, Notice of Appearance). That same

day, respondents filed a Notice of Intended Removal notifying petitioner and the court that ICE had scheduled petitioner's removal to Mexico on or after September 5, 2026. (See Dkt. 9, Notice of Intended Removal at 1); (Dkt. 9-1). Petitioner then filed, through counsel, an Ex Parte Application for Temporary Restraining Order ("Application"), seeking an order prohibiting respondents from removing petitioner while the Petition is pending and from removing petitioner to Mexico, or any other third-country, without notice and a meaningful opportunity to be heard. (See Dkt. 12, Application at 1 & 9).

Having reviewed and considered all the briefing filed with respect to petitioner's Petition and the Application, the court finds that oral argument is not necessary to resolve the Petition and the Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Petitioner, who is from El Salvador, entered the United States as an unaccompanied minor after escaping assassination attempts and torture in El Salvador. (See Dkt. 1, Petition at ECF 2); (Dkt. 19, Reply at 2). He was released from the Office of Refugee Resettlement's ("ORR") custody in October 2015. (See Dkt. 1, Petition at ECF 2); (Dkt. 19, Reply at 2). On March 30, 2017, petitioner's Form I-360 was approved and he was granted Special Immigrant Juvenile Status. (See Dkt. 1, Petition at ECF 20); (Dkt. 19, Reply at 2); (Dkt. 12-2, Form I-360 Case Status at ECF 1). Petitioner alleges that "the IJ who presided over his case mandated a federal order on his behalf that he could not be [d]eported." (See Dkt. 1, Petition at ECF 2). On March 5, 2021, petitioner was ordered removed to El Salvador but simultaneously granted deferral of removal to El Salvador under the Convention Against Torture ("CAT"). (See Dkt. 19, Reply at 2). On July 31, 2026, petitioner was arrested by immigration authorities and detained. (See id.). Petitioner has a fiancée and three-year-old daughter who is a U.S. citizen. (See Dkt. 1, Petition at ECF 2); (Dkt. 19, Reply at 2).

Petitioner alleges that his continued detention violates his due process rights under the Due Process Clause of the Fifth Amendment and Zadvydas v. Davis ("Zadvydas"), 533 U.S. 678, 121 S.Ct. 2491 (2001). (See Dkt. 1, Petition at ECF 8-12); (Dkt. 19, Reply at 2). Petitioner also

alleges that respondents' third-country removal policy, as described in a July 9, 2025, memorandum, is unconstitutional. (See Dkt. 1, Petition at ECF 12-14); (Dkt. 19, Reply at 2).

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION.

As an initial matter, respondents assert that the court lacks subject matter jurisdiction to hear the instant Petition under 8 U.S.C. § 1252(g).[1] (See Dkt. 14, Respondents' Opposition ("Opp.") at 8-11) ("Insofar as Petitioner seeks to challenge his lawful removal to a third Country pursuant to his administratively final order of removal, the Court lacks jurisdiction over that challenge under section 1252(g)[.]"). Section 1252(g) provides in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025) (citing Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 485 n. 9, 119 S.Ct. 936, 944 n. 9 (1999)). However, courts still have "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority[,] . . . even if the answer to that legal question [] forms the backdrop against which the Attorney General later will exercise discretionary authority." Id. (internal quotation marks, citations, and alterations omitted); Walters v. Reno, 145 F.3d 1032, 1052 (9th Cir. 1998).

Here, petitioner's claims do not challenge respondents' decision to commence, adjudicate, or execute a removal order. Rather, these claims challenge the lawfulness of his continued detention and the process required in relation to third country removal. See, e.g., Nasyrov v. Marin, 2026 WL 1850022, *3 (C.D. Cal. 2026) ("[T]he crux of [petitioner's] claims take issue with the process Respondents have failed to afford him when they re-detained him and may fail to provide him if they decide to remove him to a third country. These claims thus fall outside Section

[1] Unless otherwise indicated, all section references are to Title 8 of the United States Code.

1252(g)'s scope."); see Phakeokoth v. Noem, 2025 WL 3124341, *3 (S.D. Cal. 2025) ("Here, Petitioner does not challenge the legitimacy of his September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require judicial review of ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order."). Therefore, § 1252(g) does not deprive the court of jurisdiction.

For the same reason, i.e., petitioner is challenging his continued detention and inadequate process regarding potential third-country removal, respondents' §§ 1252(a)(5) and (b)(9) arguments, (see Dkt. 14, Opp. at 11-13), likewise fail. See Singh v. Gonzales, 499 F.3d 969, 978 (9th Cir. 2007) (explaining that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal"); Ortega v. Kaiser, 2025 WL 2243616, *4 (N.D. Cal. 2025) (noting "the language of these sections was not intended to preclude habeas review over challenges to detention that are independent of challenges to removal orders") (internal quotation marks omitted).

Finally, respondents assert that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") bars review of petitioner's claims. (See Dkt. 14, Opp. at 14-15). FARRA provides that courts "may review claims under the Convention Against Torture only as part of review of a final order of removal." Hamoui v. Ashcroft, 389 F.3d 821, 826 (9th Cir. 2004) (citing FARRA § 2242(d)). Respondents' argument is again misplaced because petitioner is not challenging his withholding of removal under the Convention Against Torture. See, e.g., Ortega, 2025 WL 2243616, at *4 (finding "FARRA, by its plain language, does not bar this Court's review" where petitioner "does not seek review of 'the regulations adopted to implement' CAT or 'claims considered under' CAT" but "[i]nstead, he asks not to be detained or removed without first receiving due process as to any CAT claim he might have for a third country to which the Government seeks his removal"). Therefore, the court has jurisdiction to hear petitioner's claims.

II. SIGNIFICANT LIKELIHOOD OF REMOVAL.

Petitioner is currently detained pursuant to § 1231 because he is subject to a final order of removal. (See Dkt. 19, Reply at 2); Johnson v. Arteaga-Martinez, 596 U.S. 573, 575, 142 S.Ct. 1827, 1830 (2022) ("Section 241(a) of the [INA], codified at 8 U.S.C. § 1231(a), authorizes the

detention of noncitizens who have been ordered removed from the United States."); Giorges v. Kaiser, 2025 WL 2898967, *7 (N.D. Cal. 2025) (noting the statute governing petitioner's detention "shifted" to § 1231(a) once his removal order became final). Under § 1231(a), when a noncitizen is ordered removed, the Attorney General must effectuate removal within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period.[2] Id. at § 1231(a)(2)(A). If the removal period expires before the noncitizen has been removed, § 1231(a)(6) authorizes the Attorney General to continue the "post-removal-period detention . . . to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" Zadvydas, 533 U.S. at 688, 121 S.Ct. at 2498 (quoting 8 U.S.C. § 1231(a)(6)).

In Zadvydas, the Supreme Court held that because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem[,]" § 1231(a)(6) limits a noncitizen's post-removal-period detention to "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." 533 U.S. at 689-90, 121 S.Ct. at 2498. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized[.]" Id. at 699, 121 S.Ct. at 2503. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances[.]" Id. at 700, 121 S.Ct. at 2504; see also 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

The Zadvydas court also held that "for the sake of uniform administration in the federal courts[,]" six months is a "presumptively reasonable period of detention[.]" 533 U.S. at 700-01, 121 S.Ct. at 2504-05. However, this "does not mean that every [noncitizen] not removed must be

---

[2] Petitioner's removal order was issued on March 5, 2021. (See Dkt. 19, Reply at 2); (see also Dkt. 14-3, Form I-213 at ECF 3-4). Therefore, the 90-day mandatory detention period has passed. See 8 U.S.C. § 1231(a)(2)(A).

released after six months." Id. at 701, 121 S.Ct. at 2505. Rather, "[a]fter this 6-month period," a noncitizen is eligible for conditional release if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" Id., 121 S.Ct. at 2505. If the noncitizen satisfies his initial burden, "the Government must [then] respond with evidence sufficient to rebut that showing" to warrant continued detention. Id., 121 S.Ct. at 2505. Although petitioner has not yet reached the presumptively reasonable six-month period of detention, "[m]ultiple district courts have found that the six-month presumption is rebuttable." Ndandu v. Noem, 819 F.Supp.3d 1155, 1159 (S.D. Cal. 2026), see, e.g., Hoang Trinh v. Homan, 333 F.Supp.3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in Zadvydas outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months."); Trinh v. Homan, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); Uzzhina v. Chestnut, 2025 WL 3458787, *3 n. 3 (E.D. Cal. 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."). Here, the court finds petitioner has rebutted the six-month presumption. It is undisputed that petitioner cannot be deported to his country of origin because an immigration judge granted deferral of removal to El Salvador under the Convention Against Torture. (See Dkt. 19, Reply at 2); (Dkt. 14, Opp. at 2); (Dkt. 14-3, Form I-213 at ECF 3-4). "This presents a legal impediment to Petitioner's eventual removal because he may not be removed to [El Salvador] – the only country he has a claim to citizenship – as long as the deferral of removal remains in effect." Ndandu, 819 F.Supp.3d at 1160; see, e.g., Ahmadi v. Bondi, 2026 WL 1123514, *3 (W.D. Wash. 2026) (granting Zadvydas claim and ordering release of Afghan petitioner who had Convention Against Torture deferral). Therefore, petitioner has met his burden to show that his removal is not reasonably foreseeable.

The burden then shifts to respondents to present sufficient evidence to show that removal is likely. See Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. In their Opp., respondents only rely on the Notice of Intended Removal filed on September 1, 2026, (see Dkt. 14, Opp. at 1), which states that petitioner is "scheduled for transfer outside the Central District of California on or after

9/5/26, to effectuate [his] removal to Mexico[] in accordance with a Final Order of Removal issued on 03/05/2021." (See Dkt. 9, Notice of Intended Removal at 1); (Dkt. 9-1). To date, respondents have not provided petitioner with a removal date, (see, generally, Dkt. 14, Opp.); (see Dkt. 19, Reply at 7) (noting that the Notice of Intended Removal "does not provide a date for the purported removal to Mexico"), so "after 9/5/26" could refer to any time in the future, imminent or not. In addition, although respondents assert that "Mexico will accept his removal[,]" (see Dkt. 14, Opp. at 18), they put forth no evidence establishing that Mexico would accept petitioner if removed. (See, generally, Dkt. 14, Opp.). "The bare identification of a potential country of removal without further proof about the feasibility of removal – such as an applicable repatriation agreement, the receiving country's acceptance of Petitioner[], and the issuance of travel documents – is not sufficient[.]" Orellana Quintanilla v. Mullin, 2026 WL 2660124, *3 (E.D. Cal. 2026); see, e.g., G.A.A. v. Chestnut, 2025 WL 3251316, *4 (E.D. Cal. 2025) (noting respondents did not offer evidence sufficient to rebut petitioner's showing when respondents "only provide[d] a declaration from Petitioner's temporary deportation officer" and "d[id] not provide any further details" regarding petitioner's removal); Timina v. Wofford, 2025 WL 3228138, *3 (E.D. Cal. 2025) (finding that respondents did not put forth sufficient evidence to rebut petitioner's showing when respondents "d[id] not provide any details whatsoever regarding what actions have been and are being taken in pursuing Petitioner's removal to a third country"). Respondents have thus failed to meet their burden.

In short, petitioner's continued detention is no longer authorized under § 1231(a)(6), making petitioner's continued detention unreasonable and a violation of his due process rights. See Zadvydas, 533 U.S. at 690, 121 S.Ct. at 2498 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'deprive' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects.") (internal brackets omitted); see, e.g., Gomez v. Mattos,817 F.Supp.3d 1002, 1013 (D. Nev. 2025) ("Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework

provided in Zadvydas, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted."); Rodriguez Del Rio v. Price, 2020 WL 7680560, *5 (W.D. Tex. 2020) ("As Petitioner is being held in violation of the Constitution's Due Process Clause, it follows that Petitioner should be released pursuant to the regulations in § 1231(a)(3).").

Finally, the court finds merit to petitioner's claim that he is entitled to notice and a meaningful opportunity to be heard prior to any attempted third-country removal. "[W]here the government intends to seek removal to a third country, due process requires, among other things, written notice of the country being designated and the statutory basis for the designation[.]" Lapshin v. Bondi, 2026 WL 71407, *5 (W.D. Wash. 2026) (internal quotation marks omitted). Respondents must also provide sufficient notice and a meaningful opportunity for petitioner to raise any fear-based claims before removal. See Escobar v. Chestnut, 2025 WL 3687639, *4 (E.D. Cal. 2025) ("In the context of fear-based claims specifically, noncitizens have a Due Process right to have their fear-based claims for relief from removal to third countries heard by a neutral adjudicator before the removal can be effectuated.") (internal quotation marks omitted). Respondents assert that petitioner "has received the panoply of procedural safeguards and protections available to him in his prior immigration proceedings," and "[a]t no point did Petitioner allege a fear of removal to Mexico." (See Dkt. 14, Opp. at 15) (emphasis added). Respondents' reliance on "prior immigration proceedings" is not well-taken, as petitioner learned only weeks ago that he could be removed to Mexico. (See Dkt. 9, Notice of Intended Removal at 1); (Dkt. 9-1); see, e.g., Jose Gonzalez-Fadraga v. Todd Blanche, et al., 2026 WL 3026453, *4 (D. Nev. 2026) (noting "[d]istrict courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process").

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. The reference to the Magistrate Judge is hereby withdrawn.

2. Petitioner's Petition for Writ of Habeas Corpus **(Document No. 1)** and Ex Parte Application for Temporary Restraining Order **(Document No. 12)** are **granted** as set forth in this Order.

3. Respondents shall release petitioner Gustavo Edgardo Castro Rivera (A# 208-445-040) forthwith under reasonable conditions of supervision provided under 8 U.S.C. § 1231(a)(3), and with all personal effects seized from petitioner, including all identification documents and immigration documentation.

4. Respondents shall file with the court a Notice of Compliance within three (3) calendar days following the filing date of this Order.

5. Respondents shall not re-detain petitioner absent at least seven (7) days individualized notice describing the change in circumstances necessitating petitioner's arrest and/or detention, and a pre-deprivation bond hearing before a neutral decisionmaker at which the government bears the burden of proving petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner. Should respondents take steps to remove petitioner to a third country, respondents shall not remove petitioner to any third country without providing petitioner and his counsel written notice and affording petitioner a meaningful opportunity to seek any available fear-based protections or relief.

6. Judgment shall be entered accordingly.

Dated this 23rd day of October, 2026.

/s/
Fernando M. Olguin
United States District Judge